# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN DAMON PATTERSON,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*,<br><br>Defendants. | Case No.  1:22-cv-00138-JLT-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT THE FEDERAL CLAIMS BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM AND THE COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS<br><br>(ECF No. 18)<br><br>FOURTEEN (14)  DAY DEADLINE |

Plaintiff Bryan Damon Patterson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil action pursuant to 42 U.S.C. § 1983.  Plaintiff filed a first amended complaint, and the Court screened the complaint granting Plaintiff leave to amend.  (ECF No. 10.)  Plaintiff's second amended complaint, filed on April 15, 2022, is currently before the Court for screening.  (ECF No. 18.)

**I.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted*); Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Kern Valley State Prison, in Delano, California where the events in the complaint are alleged to have occurred.  Plaintiff names as defendants: (1) John Doe One, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), (2) John Doe, Owner/CEO of Union Supply Direct, (3) John Doe Three, Owner/CEO of Walkenhorst's, (4) John Doe Four, Owner/CEO of  Access Securepak, (5) John Doe Five, Owner/CEO Seafood Dimension International, (6) John Doe Six, Owner/CEO Labriutemeals.  Defendants Does 1-6 are sued as third party state agents acting under the authority of CDCR. For claims brought under the RLUIPA, Defendants are sued in their official capacities.  For monetary claims, Defendants are sued in their individual capacities.

In claim 1, Plaintiff alleges that CDCR's contracts with state authorized vendors who violate Equal Protection and discriminate against the Hebrew denomination.  On June 25, 2021, Plaintiff was a participant in the Kosher Dietary Program ("RDP").  Plaintiff submitted a 602

appeal contending that the CDCR's policies involving the contracts with third party canteen and quarterly package vendors with John Does two, three and four are discriminatory under the Fourteenth Amendment and toward members of the Hebrew faith. The contracts fail to protect the liberty interest of members' right to freely practice their religion and deny members of the Hebrew faith with an alternative option. In his 602, Plaintiff relied on the canteen order form and the quarterly package catalogs produced by Vendors Union Supply Direct, Walkenhorsts and Access SecurePak. The order forms offered a variety of food items for other groups, such as Muslims. The order forms fail to provide any Kosher option. Each vendor offered the same 40 food items "with contradictory information as to the other vendors Kosher item claims." Plaintiff's 602 sought to reform the contracts or provide inmates of the Hebrew faith equal benefit of alternative foods or allow direct purchase from a certified Kosher vendor.

Plaintiff's appeal was denied, and Plaintiff appealed the denial. The OOA denied Plaintiff's appeal on the grounds that CDCR does not guarantee that any vendor will fulfil its obligations under contracts and that purchases from a vendor are at the buyer's own risk.

Plaintiff alleges that "because the CDCR has established policy, which authorizes state contracts with third party vendors to sell merchandise to its inmate population, but fails to guarantee that said vendors will fulfil any obligation, perform as expected, not comply with required religious dietary laws, without providing and alternative option, said policy/contracts are in fact unconstitutional." (ECF no. 18, p. 8.) Since Defendant John Doe One has contracted with John Does Two - Four, as state agents by producing merchandise for sale to inmates, Defendants have all acted under color of law.

In claim 2, Plaintiff alleges that CDCR's policy pertaining to state authorized vendor contracts are unconstitutional cruel and unusual because they deny religious freedom. Plaintiff alleges that on September 16, 2021 he submitted a 602 which challenged CDCR's policies and contracts with third parties, John Doe two – six, which subject inmates to purchase and consume food items falsely advertised as Kosher products and which violated their dietary practices. Plaintiff supported the claim by referring to prior package orders he made, which identify food items with conflicting Kosher information by each vendor. Plaintiff challenged the Kosher

certification and/or process of the meals provided by Defendant John Does Five and Six, along with supplement items and beverages (spoiled or unripe fruit and vegetables.)  Meals produced and distributed by Seafood Dimension International were regularly beyond expiration and spoiled and uneatable.  Plaintiff also challenged that CDCR's policies as to the number of hot meals provided to inmates under Title 15, 3030(a)(2) (3 meals a day, 2 hot meals) was not being satisfied by its contract with Seafood Dimension International because only one hot meal per day is provided.  CDCR contended that certified Kosher food was being provided.  Plaintiff alleges that his religious practice is based on a sincere belief that the consumption of improper food items will contaminate his spiritual being, weaken his mind and body, and effect his communion with his higher power.  Plaintiff alleges he currently prescribed Vitamin D3 because of insufficient vitamin intake, Plaintiff believes is caused by CDCR's food distribution practices.

Plaintiff summarizes the claims he asserts.  The Court will follow the numbering Plaintiff uses in the amended complaint.

In claim I, Plaintiff alleges that section 54030.9.1 of the Department Operations Manual ("DOM") violates the First Amendment in that it denies the right to freely practice religion by failing to ensure that state contractors comply with religions dietary laws in food items, and by not affording Kosher inmates an alternative option.

In claim II, the contracts with state canteen and package vendors violate the Fourteenth Amendment by discriminating against inmates in Kosher dietary program by denying equal benefit to food items offered to other religious groups.

In claim III, Defendants John Doe One through Four have failed to protect inmate's First Amendment right to freely exercise religious dietary practice by falsely advertised Kosher products.

In claim IV,  Defendants John Doe One through Four have violated the Religious Land Use and Institutionalized Persons Act by denying inmates First Amendment right to freely practice religious dietary laws by failing to ensure vendors comply with Kosher standards.

In claim V, Section 54030.9.1 of the DOM violates the Religious Land Use and Institutionalized Persons Act by failing to protect inmates First Amendment right to freely

practice religious dietary laws by failing to ensure vendors comply with Kosher standards.

In claim VI, Defendants John Doe One through Four have denied Plaintiff's First Amendment rights to freely exercise religious dietary practice by failing to ensure compliance with Kosher standards, without providing an alternative option.

In claim VII, Defendants John Doe One through Four denied Plaintiff Eighth Amendment protection by selling falsely advertised Kosher items without providing an alternative option.

In claim VIII, Defendant John Doe One, Five, and Six denied Plaintiff's Eighth Amendment protection by distributing expired or spoiled Kosher meals.

In claim IX, Defendant John Doe One, Five, and Six violated the Religious Land Use and Institutionalized Persons Act by distributing expired or spoiled Kosher meals.

In claim X, Section 54030.9.1 of the DOM violates the Fourteenth Amendment right of Equal Protection in that the policy fails to ensure contracted vendors afford Kosher inmates with equal benefit to food items offered to other religious groups.

In claim XI, Defendant John Doe One, Five, and Six denied Fourteenth Amendment right of Equal Protection in that they contracted the distribution of Kosher meals which deprive Plaintiff of equal benefit to hot meals per day pursuant to CCR 3030(a)(2), while granting the benefit to other religious groups.

As remedies, Plaintiff seeks injunctive relief as to claims 3-7 (official capacity) for a court order requiring CDCR and its agents to cease and desist selling falsely advertised Kosher items and/or allow inmate participants to purchase directly and an independent Kosher vendor.

Plaintiff seeks injunctive relief as to claims one, four and five (official capacity) for an order requiring CDCR and its agents to establish regulations assuring that contractors are in full compliance with Hebrew/Jewish dietary laws and to allow inmate participants to purchase directly and an independents Kosher vendors.

Plaintiff seeks injunctive relief as claims two and eleven (official capacity) for a court order requiring CDCR and its agents to establish regulations that require state contractors to provide alternative Kosher options as offered to other Religious group and to allow inmate participants to purchase directly and an independents Kosher vendors.

Plaintiff seeks injunctive relief as claims one, five, ten and eleven (official capacity) for an order requiring CDCR and its agents to establish regulations that all state contracts afford inmates participating in the RDP equal benefit of food services.

Plaintiff seeks declaratory judgment that the policies deny equal protection and deny religious freedom. Plaintiff also seeks monetary damages.

### III.   Discussion

Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983. Plaintiff has failed to cure the deficiencies in his amended complaint.

### A.   Acting Under Color of State Law

Section 1983 claims do not lie against purely private entities or against persons who are not acting on behalf of the state. *West v. Atkins*, 487 U.S. 42, 58 (1988). Under § 1983, Plaintiff must show: (1) a violation of rights protected by the Constitution or created by federal statute; (2) proximately caused; (3) by conduct of a person; (4) acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 236 (1941)).

Generally, private parties are not acting under color of state law. *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). When addressing whether a private party acts under color of state law, courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Conduct by private individuals or entities is only actionable under section 1983 if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (edited text). Plaintiff must plead facts demonstrating that the actions of the non-CDCR defendants are attributable to the state. *Grijalva v. Shalala*, 152 F.3d 1115, 1119 (9th Cir. 1998), vacated on other grounds, 526 U.S. 1096 (1999).

Here, the named Defendants, Union Supply Direct, Walkenhorst's, Access Securepak,

Seafood Dimension International, Labriutemeans, John Doe One - Six, are private individuals acting in private capacities. Plaintiff challenges the contractual relationship CDCR has with each and the performance of the terms of those contractual relationships.

The Supreme Court identified four tests to determine whether a private individual's actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997); *accord Harris v. Kern Cnty. Sheriffs*, No. 1:19-CV-0262-LJO-JLT, 2019 WL 1777976, at *6 (E.D. Cal. Apr. 23, 2019). Regardless which test applies, "the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Rawson v. Recovery Innovations, Inc.,* 975 F.3d 742, 7487 (9th Cir. 2020), cert. denied, 142 S. Ct. 69 (2021) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

A private actor may be a state actor if the private actor performs a public function that is "traditionally the exclusive prerogative of the state." *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). While it appears the named vendors/CEOs provide a state function of providing food for inmates, the allegations demonstrate that the contract is for limited purposes.  The defendant vendors/CEOs provide food service as a purchase option for an inmate to purchase supplemental food.  These vendors do not provide the sole or primary means for food by inmates. See Title 15, Art. 12. There are no allegations that food purchased from these food vendors was the exclusive or primary means for obtaining food. *Compare Gonzalez v. Ahern*, No. 19-CV-07423-JSC, 2020 WL 6802472, at *7 (N.D. Cal. Nov. 19, 2020) (private actor named where it contracted to be the sole provider of food for the Jail).  Defendants are not exercising a public function that is exclusively the prerogative of the state.

State action may be demonstrated where a state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Harris v. Kern Cnty. Sheriffs*, No. 1:19-CV-0262-LJO-JLT, 2019 WL 1777976, at *7 (E.D. Cal. Apr. 23, 2019) (Plaintiff has not alleged any state laws compelled the defendants to take the actions Plaintiff alleges harmed him.) There are no

7

allegations that CDCR controlled or mandated food preparation or controlled or mandated operations of the vendors. Plaintiff merely alleges that because the vendors are contracted with CDCR to provide food, they are state actors.

The Supreme Court explained, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Lugar v. Edmonson Oil Co.,* 456 U.S. 922, 941 (1982) (citation omitted). Here, Plaintiff does not allege that CDCR acted in concert with the vendors/CEOs in providing food purchased from the vendors. Plaintiff alleges that CDCR has disavowed any control of food operations for the vendors. The test examines whether a state has " 'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." Harris. 1:19-CV-0262-LJO-JLT, 2019 WL 1777976, at *7; *See Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (party charged with constitutional deprivation must be a governmental actor because "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong").

A private actor may be a state actor where there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State of itself. *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351 (1974). There are no allegations that the vendors/CEOs are mostly state institutions, dominated by state officials making their decision making. There are no allegations that the vendors funds are largely generated by the state institutions. Rather, Plaintiff merely alleges that because the Vendors/CEOs contracted with CDCR, the vendors/CEOs are state actors. Plaintiff fails to allege any facts supporting the conclusion that official state action is implicated. Plaintiff has been unable to cure this deficiency.

### B. Official Capacity

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public*

*Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (emphasis in original).  To the extent that Plaintiff seeks damages from Defendants in their official capacities, the Eleventh Amendment bars Plaintiff's suit. *See Mitchell v. Washington*, 818 F.3d 436, 441 (9th Cir. 2016). To the extent Plaintiff seeks prospective declaratory or injunctive relief, only cognizable claims against them may go forward. *See Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

### C. Supervisor Liability

Insofar as Plaintiff is attempting to sue Defendant Secretary, or any other defendant, based solely upon her supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed

with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has failed to allege direct participation by the Secretary in the alleged violations. Plaintiff has failed to allege the causal link between such defendant and the claimed constitutional violation which must be specifically alleged. He does not make a sufficient showing of any personal participation, direction, or knowledge by Defendant Secretary regarding any other prison officials' actions. Plaintiff has not alleged that Defendant Secretary personally participated in the alleged deprivations.

Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." While Plaintiff claims that a "policy" deprives him of an alternative choice of Kosher food, Plaintiff, in fact, is challenging the contracts between CDCR and private vendors. Plaintiff has not sufficiently pled a cognizable claim of supervisory liability based on a constitutionally deficient policy. An unsatisfactory contract, in this situation, does not violate the Constitution.

**D.      Equal Protection Claims Under § 1983**

"[T]he Equal Protection Clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)). To state a claim, Plaintiff must allege facts sufficient to plausibly suggest that prison officials intentionally discriminated against him because of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22, 92 S.Ct. 1079; *Shakur*, 514 F.3d at 891.

Plaintiff does not allege that CDCR is intentionally denying Plaintiff right to religious food. Indeed, the CDCR approved vendors are "alternates" to, presumably, a Kosher diet provided by CDCR. CDCR provided approved vendors to supply Kosher food to inmates of Hebrew faith. Plaintiff does not allege that CDCR acted with intentional discrimination against Plaintiff. Instead, Plaintiff complains that the approved vendors are "falsely" labeling food as "Kosher." There is no allegation that CDCR was involved in this business practice or directed such practice.

Plaintiff also appears to complain of lack of hot meals. Prisoners do not have a "constitutional right to be served a hot meal." *Garnica v. Washington Dept. of Corrections*, 965 F. Supp. 2d 1250, 1267 (W.D. Wash. 2013), aff'd, 639 F. App'x 484 (9th Cir. 2016) (serving cold food to Muslim inmates during Ramadan did not violate Eighth Amendment when food was nutritionally adequate on all but one day); *accord Osolinksi v. Coalinga State Hospital*, 2017 WL 131988 at *3 (E.D. Cal. Jan. 12, 2017) ("there is no constitutional right to be fed hot meals"); *see also Saddiq v. Trinity Services Group*, 198 F.Supp.3d 1051, 1060-61 (D. Ariz. 2016) (state prison's practice of providing cold, "megasack" meal stacks instead of hot meals during Ramadan upheld on equal protection challenge); *Carpio v. Chief Counsel*, DHS-ICE, 2018 WL 5919474, at *6 (C.D. Cal. Aug. 8, 2018), adopted, 2019 WL 1670940 (C.D. Cal. Apr. 16, 2019) (pretrial detainee's complaint that kosher meals provided were cold failed to state a Fourteenth Amendment claim); *Sprouse v. Ryan*, 346 F. Supp. 3d 1347 (D. Ariz. 2017) ("With respect to religious diets, prisoners 'have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.' ") The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health. Graves v. Arpaio, 623 F.3d 1043, 1050 (9th Cir. 2010) (per curiam). The food "need not be tasty or aesthetically pleasing." *Lemaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Plaintiff has been unable to cure this deficiency.

### E. First Amendment Free Exercise of Religion

A plaintiff asserting a free exercise claim must show that the defendant's actions substantially burden his practice of religion. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir.

2015). "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (internal quotation marks and citations omitted). "[A] prison policy that intentionally puts significant pressure on inmates ... to abandon their religious beliefs ... imposes a substantial burden on [the inmate's] religious practice." *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (internal quotation marks and citation omitted). However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. *See McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987). For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. *See Ward v. Walsh*, 1 F.3d 873, 877-79 (9th Cir. 1993).

Courts have held that, where a plaintiff establishes that his need for a kosher diet is a sincerely held religious belief, denial of the diet is a substantial burden to his religious practice. *See Shakur*, 514 F.3d at 885 (finding that prison's failure to provide kosher meals to Muslim prisoner violated the Free Exercise clause); *White v. Linderman*, No. 11-cv-8152, 2013 WL 4496364, at *6 (D. Ariz. Aug. 22, 2013). Prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See *McElyea v. Babbit*, 833 F.2d 196, 198 (9th Cir. 1987).

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987); *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); *see Haynes v. Orel*, No. 2:19-CV-1988 AC, 2021 WL 4355431, at *2 (E.D. Cal. Sept. 24, 2021)

Plaintiff fails to set forth sufficient facts to support his free exercise of religion claim. He alleges the need for a Kosher diet is a sincerely held belief. However, as stated above, it appears that no state official is the cause for the false advertisement of Kosher food or the provision of

non-Kosher food.  That an outside vendor failed to provide food Plaintiff desired is not the result of a state actor. As in the first amended complaint, the SAC alleges that Plaintiff was able to purchase some Kosher food from an alternate source, and the complaint is silent on CDCR's provision of Kosher diet within the institution.  Moreover, there are no allegations that Plaintiff has been unable to sustain good health with food that satisfied the dietary restriction of his religion.

### F. RLUIPA

A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... unless the government demonstrates that imposition of the burden on that person ... is in furtherance of a compelling governmental interest ... and is the least restrictive means of furthering that ... interest." 42 U.S.C.A. § 2000cc-1(a). "RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013); 42 U.S.C. § 2000cc-5(7).

As with the First Amendment, under the RLUIPA, the government imposes a "substantial burden" on a prisoner when it puts "substantial pressure on [him] to modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (citation omitted). RLUIPA is more protective than the First Amendment, in that the availability of alternative means of practicing religion is irrelevant to whether the Act has been violated. *See Holt v. Hobbs*, 135 S. Ct. at 862. With RLUIPA, the " 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise ..., not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, *Sossamon v. Texas*, 563 U.S. 277, 279 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or

injunctive relief against defendants acting within their official capacities.

For the same reasons as Plaintiff's First Amendment claim, Plaintiff fails to state a cognizable claim.

### G. State Law Violations

Plaintiff also alleges violation of Title 15 and state law. Breach of contract is a state law claim. To the extent Plaintiff is attempting to bring an action for breach of contract, that is not a cause of action arising under 42 U.S.C. § 1983. Defendants failure to honor the alleged contract implicates no federal constitutional right. *Sariaslan v. Rackley*, 678 Fed.Appx. 613, 613-14 (9th Cir. 2017) (finding district court did not abuse its discretion in dismissing pro se plaintiff's breach of contract claims without leave to amend).

To the extent that defendants have not complied with applicable state statutes or prison regulations, this deprivation does not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See, e.g., Nible v. Fink,* 828 Fed.Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11-12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.,* 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S-04-0878-GEB-DAD-P, 2009 WL 256574, *12 n.

4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983. Accordingly, Plaintiff cannot maintain a § 1983 claim for violations of prison rules or other California law. As Plaintiff has not stated a cognizable claim for relief under federal law, it is recommended that the Court decline to exercise supplemental jurisdiction over any purported state law claims and dismiss those claims without prejudice.

### F. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id.

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th

Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

### IV. Conclusion and Recommendation

For the reasons discussed, the Court finds that Plaintiff has failed to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

For the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's federal claims be dismissed with prejudice based on Plaintiff's failure to state a cognizable claim upon which relief may be granted; and

2. The Court decline to exercise supplemental jurisdiction over Plaintiff's purported state law claims.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 7, 2022**                               /s/ Barbara A. McAuliffe            _
                                                     UNITED STATES MAGISTRATE JUDGE

16